IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVEREST INDEMNITY | : | CIVIL ACTION |
| INSURANCE COMPANY | : | |
| | : | |
| v. | : | |
| | : | |
| VALLEY FORGE, INC. | : | NO. 15-593 |

MEMORANDUM

Dalzell, J.                                                    October 15, 2015

## I.      Introduction

We consider here cross-motions for summary judgment filed by plaintiff Everest

Indemnity Insurance Company ("Everest") and defendant Valley Forge, Inc. ("Valley Forge").

Everest brings an action against defendant Valley Forge seeking a declaratory judgment

that no coverage is available for Valley Forge under the commercial general liability policy

bearing number EF4ML02378-121 ("the Policy") pursuant to the Commercial General Liability

("CGL") coverage form or the Site Specific Pollution Liability ("SSPL") coverage form.

We have diversity jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

Both Everest and Valley Forge move for summary judgment on the duty to defend issue

in this case.  For the reasons set forth below, we will deny defendant's motion for summary

judgment, grant plaintiff's motion for summary judgment, and enter a declaratory judgment for

plaintiff and against defendant.

## II.      Legal Standard

Parties may move for summary judgment pursuant to Fed. R. Civ. P. 56(a) on any claim

or defense in the case, and the "court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the moving party meets this initial burden, Fed. R. Civ. P. 56 then obliges the non-moving party to show, via submissions beyond the pleadings, that there are genuine factual issues for trial. Id. at 324.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence is insufficient). Material facts are those that would affect the outcome of the case under the governing law. Id. at 248. We may not make credibility determinations or weigh the evidence, and we must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001). Our function is to determine whether there is a genuine issue for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Anderson, 477 U.S. at 249).

We treat cross-motions for summary judgment as if they were distinct, independent motions, and must rule on each party's motion on an individual and separate basis. Beneficial

Mut. Sav. Bank v. Stewart Title Guar. Co., 36 F. Supp. 3d 537, 544 (E.D. Pa. 2014) (citing

Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008)).  In evaluating each motion,

we must consider the evidence in the light most favorable to the non-moving party.  Trinity

Industries, Inc. v. Chicago Bridge & Iron Co., 735 F.3d 131, 134-35 (3d Cir. 2013).

We recount the facts as stipulated and as the record evidences.

III.     **Factual and Procedural History**

Everest issued the Policy at the heart of this dispute to Valley Forge for the one-year

period between October 14, 2012 and October 14, 2013.  Stipulated Facts ("SF")  at ¶ 5.  The

relevant CGL portion of the Policy states that Everest "will pay those sums that the insured

becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to

which this insurance applies.  We will have the right and duty to defend the insured against any

'suit' seeking those damages."  CGL at Sec. I.  The CGL form defines "bodily injury" as "bodily

injury, sickness or disease sustained by a person …."  Id. at Sec V.  It defines "property damage"

as "a. Physical injury to tangible property, including all resulting loss of use of that property...; or

b.  Loss of use of tangible property that is not physically injured."  Id.

The SSPL coverage form provides limited coverage for certain pollution-related

liabilities.  The Policy defines "site pollution condition," to mean "the discharge, dispersal,

seepage, migration, release or escape of 'pollutants' from a 'covered site'".  SSPL at Sec. VI.  It

further states that the Policy applies to "bodily injury" and "property damage" when, "[t]he

'bodily injury' or 'property damage' is caused by a 'site pollution condition' that emanates from

your 'covered site' in the 'coverage territory.'"  Id. at Sec. I.  The SSPL coverage form defines

"property damage" as "a. Physical injury to tangible property, including all resulting loss of use

of that property; b.  Loss of use of tangible property that is not physically injured; or c. 'Cleanup

costs.'" Id. at Sec. VI.  "Cleanup costs" are defined as:

> expenses incurred in the investigation, evaluation, monitoring,
> testing, removal, containment, treatment, response, disposal,
> remediation, detoxification or neutralization of any 'pollutants,'
> provided that such expenses result from a 'site pollution condition'
> that emanates form (sic) your 'covered site,' and that such
> expenses:
> a. Are specifically mandated by the supervising governmental
> authority duly acting under the authority of environmental law(s);
> or
> b. Have been actually incurred by the supervising governmental
> authority or by a third party.

Id.  "Pollutants" are defined as "any solid, liquid, gaseous, thermal, or biological substance,

material, matter, irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis,

chemicals, waste and naturally occurring radioactive material.  Waste includes materials to be

recycled, reconditioned or reclaimed."  Id.

This case arises from a dispute over whether Everest has a duty to defend and indemnify

Valley Forge in an action brought by the Commonwealth of Pennsylvania against Valley Forge

in the Court of Common Pleas of Montgomery County, Pennsylvania ("Underlying Action").

Valley Forge is a Pennsylvania corporation that operates a facility for the receipt and processing

of a variety of materials, including concrete, asphalt, timber, and uncontaminated soil.

Township's Underlying Complaint[1] ("Twp.'s Compl.") at ¶¶ 3-4.  The facility is located at 450

E. Valley Forge Road, King of Prussia, PA 19406, within Upper Township, Pennsylvania,

approximately 400 feet away from the Schuylkill River, and within 500 feet of the adjoining

---

[1] We refer to the Underlying Action's complaint at "Township's Complaint" throughout our Opinion because, while the plaintiff in the Underlying Action is technically the Commonwealth, the Township is bringing this action through its Special Solicitor.  The Township's Underlying Complaint relevant to this matter before us is the amended complaint filed on May 21, 2014.  See SF at ¶ 3.

Greentree neighborhood.  Id. at  ¶¶ 4-5.   The Commonwealth, acting upon the special

relationship of the Special Solicitor of Upper Township, brought the Underlying Action against

Valley Forge on October 22, 2013 to abate a public nuisance, alleging that Valley Forge had

violated the Solid Waste Management Act, 35 P.S. §§ 6018.101, et seq., the Clean Streams Law,

35 P.S. §§ 691.1, et seq., and Pennsylvania common law.  Id. at ¶ 1 and SF at ¶¶  1-2.

Specifically, the Township avers in its Complaint that large, unsightly stockpiles of mulch at

Valley Forge's facility constitute a public nuisance as they impair the enjoyment of the adjoining

residents' properties and the value of those properties.  Twp.'s Compl. at ¶¶ 8, 12-13.  It also

alleges that the mulch piles adversely affect the community at large.  Id. at ¶ 26.  The

Township's Complaint alleges that the mulch piles are over fifty feet high, far exceeding the

limit of thirty-five feet imposed by the permits the Township issued to Valley Forge.  Id. at ¶¶ 7-

8.  The Underlying Action also seeks costs and attorney's fees incurred to abate the alleged

nuisance.  Id. at ¶ 16.  On or about July 8, 2014, certain residents of the Township filed a motion

to intervene in the Underlying Action, and that motion was granted.  Pl.'s Mem. Law Supp. Mot.

Summ. J. at 7 and Def.'s Mem. Law Supp. Mot. Summ. J. at 4.  These interveners adopted in

whole the Township's Complaint.  Id.

On October 29, 2013, citing the Policy, Valley Forge demanded that Everest defend

Valley Forge from the claims asserted against it in the Underlying Action.  SF at ¶ 6.  Valley

Forge further demanded defense coverage from Everest after the amended complaint in the

Underlying Action was filed in May of 2014.  Id. at ¶ 7.  Everest responded by denying that the

allegations in the Underlying Action triggered a duty to defend.  Id. at ¶ 8.  Everest then initiated

this action seeking a declaratory judgment from this Court stating that Everest has no duty to

defend or indemnify Valley Forge in the Underlying Action.  Id. at ¶ 9.  Valley Forge responded

by asserting counterclaims for declaratory judgment, breach of contract, and bad faith.  Id. at  ¶ 10 and Def.'s Counterclaim at  ¶¶ 15-27.

## IV.   <u>Discussion</u>

Everest and Valley Forge, as noted, have filed cross-motions for summary judgment. Valley Forge moves for summary judgment on the issue of whether Everest has a duty to defend Valley Forge in the Underlying Action.  Everest moves for summary judgment on the same issue.  We consider the parties' motions for summary judgment separately and in turn.

### A.   <u>Defendant Valley Forge's Motion for Summary Judgment</u>

Valley Forge moves for summary judgment on the duty to defend issue in this dispute, and we will deny its motion for the reasons set forth below.  An insurer's duty to defend is broader than its duty to indemnify.  <u>Post v. St. Paul Travelers Ins. Co.</u>, 691 F.3d 500, 517 (3d Cir. 2012) (citing <u>American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.</u>, 2 A.3d 526 (Pa. 2010)).  This obligation is distinct, separate, and apart from the insurer's duty to provide coverage.  <u>Id.</u>  An insurer has a duty to defend when "the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." <u>American</u>, 2 A.3d at 541.  <u>See also</u> <u>Erie Ins. Exchange v. Transamerica Ins. Co.</u>, 533 A.2d 1363, 1368 (Pa. 1987) (stating that a duty to defend arises "whenever the complaint filed by the injured party may <u>potentially</u> come within the coverage of the policy.") (emphasis original).  A court must therefore take two steps when deciding whether an insurer has a duty to defend under Pennsylvania law: (1) interpret the scope of the insurance policy, and (2) decide whether the complaint in an underlying action triggers the policy.  <u>See</u> <u>Peerless Ins. Co. v. Pennsylvania Cyber Charter School</u>, 19 F. Supp. 3d 635, 643 (W.D. Pa. 2014).

6

Insurance policies are contracts governed by traditional rules of contract interpretation, and thus the mutual intent of the parties at their formation governs interpretation.  American, 2 A.3d at 540.  Provisions of an insurance contract, like other contracts, must "be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to all of its provisions."  Masters v. Celina Mut. Ins. Co., 224 A.2d 774, 776 (Pa. Super. Ct. 1966).

Courts determine whether a claim against an insured is potentially covered by an insurance policy by comparing the "four corners" of the insurance policy to the "four corners" of the complaint.  Post, 691 F.3d at 517 (citing American, 2 A.3d at 541).   The "four corners" rule means that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured.  Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006) (citing Mutual Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999)).  Courts determine whether an insurer's duties are triggered under a policy by looking at the factual allegations of the underlying complaint, not the causes of action asserted.  See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); see also Mutual Benefit, 725 A.2d at 745 ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead it is necessary to look at the factual allegations contained in the complaint.").  We must take the factual allegations of the underlying complaint against the insured as true and liberally construe them in favor of the insured.  Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992).

Valley Forge avers that the Township's Complaint alleges facts that trigger Everest's duty to defend under both the CGL and SSPL sections of the policy.[2]  The relevant CGL portion of the Policy states that Everest "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages."  CGL at Sec. I.  The CGL form defines "bodily injury" as "bodily injury, sickness or disease sustained by a person…."  Id. at Sec V.  It defines "property damage" as "a. Physical injury to tangible property, including all resulting loss of use of that property...; or b.  Loss of use of tangible property that is not physically injured."  Id.  The Township's Complaint in the Underlying Action contains factual allegations asserting that Valley Forge has fifty-foot piles of mulch that violate permits issued by the Township, are unsightly, impair the enjoyment of adjoining residents' properties and the values of the same properties, and adversely affect the community at large.  Twp. Compl. at ¶¶ 8, 12-13, 26.

The key question is whether the Complaint's alleged factual allegations regarding the mulch piles constitutes "property damage" under the Policy.  The facts alleged by the Township's Complaint that the mulch piles are too high and impairing the enjoyment of the adjoining residents' properties clearly do not fall under the "[p]hysical injury to tangible property" definition of "property damage" provided for in the Policy.  The question of whether

---

[2] Valley Forge also puts forward (to be charitable) the novel argument that Everest has effectively admitted that the Underlying Action potentially falls under the scope of the Policy, and thus has a duty to defend, simply by its asking this Court for a declaratory judgment on the matter.  See Def.'s Mem. at 4-5.  This is absurd.  It is an insurer's duty to determine whether a pleading raises a claim against an insured that would potentially be covered by an insurance policy.  Post, 691 F.3d at 517.  Everest has performed this very duty by conveying to Valley Forge its position that under the Policy Everest has no duty to defend Valley Forge in the Underlying Action.  The fact that Everest now seeks our declaration confirming its posture is in no way tantamount to an admission that it has a duty to defend.

the alleged harm caused by the high mulch piles' would constitute a "loss of use" under the Policy is much less straightforward.

Our analysis here centers on whether a public nuisance is considered a "loss of use" under the Policy.  A public nuisance is "an unreasonable interference with a right common to the general public." Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d 303, 315 (3d Cir. 1985) (quoting Restatement (Second) of Torts § 821B(1)).  A public nuisance differs from a private nuisance, which "requires an invasion of another's interest in the private use and enjoyment of his or her land." 2 Summ. Pa. Jur. 2d Torts § 21:4 (2d ed.).  By contrast, a public nuisance "is an inconvenience or troublesome offense that annoys a whole community in general." Id.  This difference is not academic, as the "doctrine of public nuisance protects interests quite different from those implicated in actions for private nuisance." Philadelphia Electric Co., 762 F.2d at 315.  A private nuisance harms a specific person or property, while a public nuisance, which may cause harm to many, does not necessarily cause special or specific harm to a single property owner.  See Youst v. Keck's Food Service, Inc., 94 A.3d 1057, 1071-72 (Pa. Super. Ct. 2014). Recognizing this difference, Pennsylvania courts have determined that public nuisances can only allow property owners to pursue claims for  property damage when a plaintiff shows that she suffered special harm.  In Duquesne Light Co. v. Pennsylvania American Water Co., 850 A.2d 701 (Pa. Super. Ct. 2004), the court found that special harm was required for individual property owners to recover damages in a public nuisance claim.  The court stated that "[i]f every person or entity injured from a public nuisance could recover economic or even property damages, liability could be exorbitant; thus, only those plaintiffs who suffer special harm may recover." Duquesne, 850 A.2d at 706 (quoting In re One Meridian Plaza Fire Litigation, 820 F. Supp. 1460, 1481

(E.D. Pa. 1993) <u>reversed</u> <u>on</u> <u>different</u> <u>grounds</u> <u>by</u> <u>Federal Ins. Co. v. Richard I. Rubin & Co.,</u> <u>Inc.</u>, 12 F.3d 1270 (3d Cir. 1993)).

Since the Township's Complaint alleges facts that the large mulch piles are unsightly and violate the permits issued to Valley Forge, the mulch piles at the center of the Underlying Action constitute a public nuisance for our analysis.[3]  There are no factual allegations in the Complaint, even when liberally construed in favor of Valley Forge, that the property owners near Valley Forge's mulch piles have lost any constructive use of their properties.  The piles are simply alleged to be "unsightly" and thus they impair the "enjoyment" and value of the adjacent properties and adversely affect the community at large.  Twp. Compl. at ¶¶ 8, 12-13, 26.  It is notable that the property owners that joined the Underlying Action <u>adopted the Township's</u> <u>Complaint in its entirety</u>.  <u>See</u> Pl.'s Mem. at 7 and Def.'s Mem. at 4.  No specific property owner has brought a claim of special harm.  Instead, each one agreed with the Township's factual allegations that the unsightly mulch piles impaired the enjoyment and value of adjacent properties -- facts that when taken as true constitute a public nuisance affecting the community at large <u>and no single property in particular</u>.  The public nuisance alleged by the Township's Complaint does not constitute "loss of use" under the Policy.  We therefore find that the CGL portion of the Policy does not impose a duty to defend on Everest given the Underlying Action against Valley Forge.

Valley Forge also avers that Everest has a duty to defend under the SSPL section of the Policy.  The SSPL form of the Policy covers pollution-related property damage, bodily injury,

---

[3] While the Township's Complaint alleges that the mulch piles constitute a public nuisance, this averment is a legal conclusion that we may not accept as true for the purposes of our analysis.  Applying Pennsylvania law to the factual allegations in the Township's Complaint, we determine that, when taken as true, those facts state a cause of action for public nuisance.

and/or cleanup costs.[4]  The form, however, only applies to bodily injury, property damage, or cleanup costs caused by a "site pollution condition."  SSPL at Sec. I.  A "site pollution condition" is defined as the "discharge, dispersal, seepage, migration, release or escape of 'pollutants' from a "covered site.'"  Id. at Sec. VI.  Here, the Township's Complaint does not allege any discharge, dispersal, seepage, migration, release, or escape of pollutants from Valley Forge's facility.  It seems that the mulch piles, to deploy a useful personification, are simply sitting there.  The Township's Complaint alleges that the mulch piles are too high, unsightly, and thus impair the enjoyment and value of adjacent properties and adversely affect the community at large.  It does not allege that the mulch piles caused any "discharge," "seepage," or any other descriptor used in the Policy.  We therefore find that the facts alleged by the Township's Complaint do not impose a duty to defend on Everest under the SSPL section of the Policy.

Since the factual allegations in the Township's Complaint fail to trigger a duty to defend on the part of Everest under either the CGL or SSPL sections of the Policy, we will deny Valley Forge's motion for summary judgment on the duty to defend issue.

### B.    Plaintiff Everest's Motion for Summary Judgment

Everest also moves for summary judgment on the duty to defend issue in this dispute, and we will grant its motion for the reasons set forth below.  While our analysis of Everest's motion will mirror our previous analysis of Valley Forge's motion, we are required to analyze cross-motions for summary judgment as if they were independent and distinct and we must rule on them separately.  See Lawrence, 527 F.3d at 310.

---

[4] Valley Forge spills much ink explaining that pollution is a cornerstone of the Underlying Action.  See Def.'s Mem. at 11-14.  We need not address the issue of whether fifty-foot tall piles of mulch constitute pollution under the Policy, as we have determined that the SSPL coverage is not implicated by the facts alleged in the Township's Complaint.

An insurer's duty to defend is of course broader than its duty to indemnify. Post, 691 F.3d at 517. This obligation is distinct, separate, and apart from an insurer's duty to provide indemnity coverage. Id. An insurer has a duty to defend when "the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." American, 2 A.3d at 541. See also Erie, 533 A.2d at 1368 (stating that a duty to defend arises "whenever the complaint filed by the injured party may potentially come within the coverage of the policy.") (emphasis original). A court must therefore employ two steps when deciding whether an insurer has a duty to defend under Pennsylvania law: (1) interpret the scope of the insurance policy, and (2) decide whether the complaint in an underlying action triggers that policy. See Peerless, 19 F. Supp. 3d at 643.

As earlier rehearsed, insurance policies are contracts governed by traditional rules of contract interpretation, and thus the mutual intent of the parties at its formation governs the interpretation. American, 2 A.3d at 540. Provisions of an insurance contract, like other contracts, must "be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to all of its provisions." Masters, 224 A.2d at 776.

Courts determine whether a claim against an insured is potentially covered by an insurance policy by comparing the "four corners" of the insurance policy to the "four corners" of the complaint putatively covered. Post, 691 F.3d at 517 (citing American, 2 A.3d at 541). The "four corners" rule means that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured. Kvaerner, 908 A.2d at 896. As noted, courts determine whether an insurer's duties are triggered under a policy by looking at the factual allegations of the underlying complaint, not the causes of action asserted. See Frog, Switch &

Mfg. Co., Inc., 193 F.3d at 746; see also Mutual Benefit, 725 A.2d at 745 ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead it is necessary to look at the factual allegations contained in the complaint.").  We must take the factual allegations of the underlying complaint against the insured as true and liberally construe them in favor of the insured.  Biborosch, 603 A.2d at 1052.

Everest asserts that the Township's Complaint does not trigger a duty to defend Valley Forge under the CGL portion of the Policy.  The relevant CGL language states that Everest "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies [and they] will have the right and duty to defend the insured against any 'suit' seeking those damages."  CGL at Sec. I.  The CGL form defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death…."  Id. at Sec V.  It defines "property damage" as "a. Physical injury to tangible property, including all resulting loss of use of that property...; or b.  Loss of use of tangible property that is not physically injured."  Id.  The Township's Complaint in the Underlying Action contains factual allegations asserting that Valley Forge has fifty-foot piles of mulch that violate permits the Township issued, are unsightly, impair the enjoyment of adjoining residents' properties and the values of the same properties, and adversely affect the community at large.  Twp. Compl. at ¶¶ 8, 12-13, 26.

The factual allegations in the Township's Complaint do not constitute property damage under either the "physical injury" or "loss of use" definitions.  The piles of mulch are not alleged to have caused any physical injury to tangible property.  Instead, they are just a tall, unsightly nuisance.  Further, as we previously discussed, the Township's Complaint alleges facts that if true, would constitute a public nuisance on the part of Valley Forge.  A public nuisance is "an

unreasonable interference with a right common to the general public." Philadelphia Electric Co,
762 F.2d at 315, and differs from a private nuisance, which "requires an invasion of another's
interest in the private use and enjoyment of his or her land."  2 Summ. Pa. Jur. 2d Torts § 21:4
(2d ed.).  A private nuisance harms a specific person or property, while a public nuisance, which
may cause harm to many, does not necessarily cause special or specific harm to any one property
owner or property.  See Youst, 94 A.3d at 1071-72. A public nuisance where no specific harm is
alleged to any one landowner therefore cannot be considered property damage within the
meaning of the CGL Policy. See Duquesne, 850 A.2d at 706.

Since the Township's Complaint alleges facts that the large mulch piles are unsightly and
violate the permits issued to Valley Forge, the mulch piles at the center of the Underlying Action
thus constitute a public nuisance for our analysis.  There are no factual allegations in the
Complaint suggesting that the property owners near Valley Forge's mulch piles have lost any
constructive use of their properties.  The piles are simply alleged to be "unsightly," impairing the
"enjoyment" and value of the adjacent properties and adversely affecting the community at large.
Twp. Compl. at ¶¶ 8, 12-13, 26.  It is notable that the property owners that joined the Underlying
Action adopted the Township's Complaint in its entirety.  See Pl.'s Mem. at 7 and Def.'s Mem.
at 4.  No specific property owner has brought a claim of special harm.  Instead, each one agreed
with the Township's factual allegations that the unsightly mulch piles impaired the enjoyment
and values of adjacent properties -- facts that when taken as true definitionally constitute a public
nuisance affecting the community at large and no single property in particular.  As the public
nuisance alleged by the Township's Complaint does not constitute "loss of use" under the Policy,
we agree with Everest that the factual allegations do not trigger a duty to defend.

Everest also asserts that the Township's Complaint does not trigger a duty to defend Valley Forge under the SSPL portion of the Policy.  But the SSPL form of the Policy covers pollution-related property damage, bodily injury, or cleanup costs.  The SSPL form only applies to bodily injury, property damage, or cleanup costs caused by a "site pollution condition."  SSPL at Sec. I.  A "site pollution condition" is defined as the "discharge, dispersal, seepage, migration, release or escape of 'pollutants' from a "covered site.'"  Id. at Sec. VI.  Here, the Township's Complaint does not allege any such discharge, dispersal, seepage, migration, release, or escape of pollutants from Valley Forge's facility.  The mulch piles simply sit there.  The Township's Complaint alleges that the mulch piles are too high, unsightly, and thus impair the enjoyment and value of adjacent properties and adversely affect the community at large.  It does not allege that the mulch piles are causing any "discharge," or "seepage," or anything else described in the SSPL.  We therefore find that the facts alleged in the Township's Complaint do not impose a duty to defend upon Everest under the SSPL section of the Policy.  And, since the factual allegations in the Township's Complaint fail to trigger a duty to defend on the part of Everest under either the CGL or SSPL sections of the Policy, we will grant Everest's motion for summary judgment on the duty to defend issue.

Moreover, since the duty to defend is broader than the duty to indemnify, an insurer with no duty to defend has no duty to indemnify.  See Haines v. State Auto Property and Cas. Ins. Co., 417 F. App'x 151, 153 (3d Cir. 2011) (non-precedential) (citing Kvaerner, 908 A.2d at 896). While Everest has failed to move for summary judgment on its duty to indemnify, we may enter summary judgment on that issue sua sponte pursuant to Fed. R. Civ. P. 56(f).  Further, our Court of Appeals has recognized an exception to the notice requirement of Rule 56(f) in cases where summary judgment is granted sua sponte when (1) the point at issue is purely legal, (2) the

record was fully developed, and (3) failure to give notice does not prejudice the party.  Gibson v. Mayor and Council of City of Wilmington, 355 F.3d 215, 218 (3d Cir. 2004).  Those conditions are unquestionably met here.  An insurer having no duty to indemnify if it has no duty to defend is a purely legal issue.  The record here is fully developed.  And failing to give Valley Forge notice does not prejudice it as there is nothing Valley Forge can do to overcome well-settled law that an insurer with no duty to defend also has no duty to indemnify.  We will therefore grant summary judgment for Everest on the duty to indemnify issue.

And since we have found for Everest on both the duty to defend and duty to indemnify issues, we will sua sponte grant summary judgment in favor of Everest on Valley Forge's counterclaims for breach of contract and bad faith.  There can be no breach of contract or bad faith claim since Everest has neither a duty to defend or indemnify Valley Forge in the underlying action.[5]  Further, we need not give Valley Forge notice of our decision since the same Gibson conditions are present here: our grant of summary judgment on the counterclaims is purely a legal issue, the record was fully developed, and failure to give notice does not prejudice Valley Forge as it cannot sustain its counterclaims after our finding that Everest has no duty to defend or indemnify it under the Policy.  We will therefore grant summary judgment for Everest on Valley Forge's breach of contract and bad faith counterclaims.

**V.    Conclusion**

For the reasons set forth above, we find that Everest has neither a duty to defend nor indemnify Valley Forge in the Underlying Action.  We will therefore grant Everest's motion for

---

[5] The elements of a breach of contract claim are the existence of a contract, a breach of duty imposed by that contract, and damages.  See Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710 (Pa. Super. Ct. 2005).  To recover under a claim of bad faith, a plaintiff must show that the insurer did not have a reasonable basis for denying benefits.  See Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680 (Pa. Super. Ct. 1994).

summary judgment on the duty to defend issue, deny Valley Forge's motion for summary judgment on the duty to defend issue, grant summary judgment for Everest <u>sua</u> <u>sponte</u> on the duty to indemnify issue, grant summary judgment <u>sua</u> <u>sponte</u> for Everest on Valley Forge's breach of contract and bad faith counterclaims, and enter judgment in favor of Everest and against Valley Forge.

BY THE COURT:

   <u>/s/ Stewart Dalzell, J.</u>
Stewart Dalzell, J.